**FERRELL CONSTRUCTION COMPANY, INC., Appellee and Cross-Appellant,**

v.

**RUSSELL CREEK COAL COMPANY, Appellant and Cross-Appellee.**

No. 53774.

Supreme Court of Oklahoma.

Feb. 16, 1982.

Rehearing Denied April 22, 1982.

Logan, Lowry, Johnston, Switzer & West by Donald K. Switzer, Vinita, for appellee and cross-appellant.

Jenkens & Gilchrist by Charles A. Gall, Dallas, Tex., for appellant and cross-appellee.

LAVENDER, Justice:

Russell, owner of a forty acre coal mining lease in Craig County, Oklahoma, entered into a Strip Mining Agreement in writing as of September 3, 1977, with Ferrell pursuant to which Ferrell was to remove the overburden, extract the coal, and load it for $.50 per bank yard for the overburden, $.30 per ton for the coal stockpiled for subsequent loading, and a sum equal to Ferrell's documented cost of blasting.

In preparation for the excavation to remove the overburden and prior to September 15, 1977, Ferrell performed the following which were required of it under the contract: started the procurement of the mining permit; made contacts to obtain approval of reclamation and wage bonds; started trying to locate a mining office to place on the site; procured the required insurance coverage; and procured a scraper and bulldozer.

Mr. Ferrell testified that while waiting for the mining plan which was under the contract to be furnished by Russell, he had a telephone conversation on September 12, 1977, with a representative of Russell in which the representative discussed cancellation of the contract and demanded "good faith" demonstration of performance as an alternative. Thereafter, and over a span of a week or ten days, Ferrell cleared off the vegetation on the lease, built a mining road

and installed a 30-inch culvert, hauled a building to the site, and hauled in machinery.

It was not until September 30, 1977, that Russell furnished a mining plan.

It was at this stage that Russell wrote a letter to Ferrell dated October 14, 1977, and delivered to Ferrell on October 17, 1977, in which Russell declared the Strip Mining Agreement cancelled, and declared null and void, "pursuant to the terms of said Strip Mining Agreement as contained in Section 1 thereof."

Thereupon, Ferrell filed suit against Russell for damages for breach of the contract, in which Ferrell sought to recover the profits it claimed it would have made had it been permitted to perform the contract in its entirety. A jury verdict was returned in favor of Ferrell, and a judgment was entered in Ferrell's favor in the sum of $135,850 and costs. Both parties appealed.

The provisions of the Strip Mining Agreement which are critical to the determination of the issues presented on appeal are set forth, as follows:

(Recitation Clause) "WHEREAS, Russell Creek estimates that there are approximately 45,000 tons of merchantable coal in and under the real estate covered by the Niksch Lease and approximately one million cubic yards of overburden which must be removed in order to strip mine said coal, . . . ."

\* \* \* \* \* \*

"1. *Mining Area and Commencement of Mining*

"The Niksch Lease is presently in force and the real estate subject to the Niksch Lease is currently available for mining by Russell Creek. The Contractor shall commence mining work on the lands covered by the Niksch Lease (said land herein called the 'Mining Area') immediately. If mining is not commenced by September

15, 1977, this contract will be considered null and void.

\* \* \* \* \* \*

"2. *Work to be Done by Contractor*

"The Contractor shall furnish all labor, equipment and materials necessary to perform the following operations on the Mining Area (said operations herein called the 'Work'):

"(a) Contractor shall excavate, mine and remove all merchantable, stripable coal to maximum depth from the natural surface of the ground to the bottom of the coal that, in the opinion of Russell Creek, can be practically, economically and profitably strip mined from the Mining Area. In doing the work Contractor shall proceed according to the mining plan of Russell Creek for the Mining Area and Contractor shall rely upon the geological information submitted by Russell Creek, and, unless otherwise directed by Russell Creek, the Contractor shall mine coextensive with the boundaries of the Mining Area as limited by the physical features of the terrain to be mined."

We will first consider whether Ferrell's preliminary preparations for excavation performed prior to September 15, 1977, constituted the *commencement of mining work* within the meaning of § 1 of the agreement. This, in turn, requires the initial determination of whether the contract is ambiguous.

■ Whether a contract is ambiguous so as to require extrinsic evidence to clarify the ambiguity is purely one of law for the court,[1] and the construction of an unambiguous contract is a matter of law for the court.[2] As this court said in *National Ins. Underwriters v. Walker*,[3] (at p. 740):

"Our statutory law on interpretations of contracts are expressive of the wisdom of the common law and furnish us rules

1. *Panhandle Cooperative Royalty Co. v. Cunningham*, Okl., 495 P.2d 108, 112 (1972); *Shepherd v. French*, Okl.App., 612 P.2d 727 (1980); *Paclawski v. Bristol Laboratories, Inc.*, Okl., 425 P.2d 452 (1967); *Harjo Gravel Co. v. Luke-Dick Co.*, 194 Okl. 537, 153 P.2d 112 (1944).

2. *Walker v. Telex Corp.*, 583 P.2d 482, 485 (1978).

3. 206 Okl. 629, 245 P.2d 737 (1952).

here applicable. Among such rules we find that 'intent controls,' 'that language governs,' 'that intention is ascertained from the writing,' 'that effect should be given every part,' 'interpretation favors validity,' 'words to be taken in their ordinary sense,' 'technical words to (be) used as understood by the profession,' 'repugnancy should be reconciled and that if there is uncertainty the language must be construed most strongly against the person causing the uncertainty' * * *."

While the word "mine" or "mining" is a broad term of imprecise meaning and unenlightening as to its import when considered apart from its contextual usage,[4] the words "commence mining work" and "if mining is not commenced" take on a more precise and illuminating meaning when used in a mining lease. In *Cromwell v. Lewis*,[5] it was held that locating an oil and gas well, the digging of the cellar, the hauling of 15 or 18 loads of derrick timber onto the site with more materials in transit prior to July 1, 1922, constituted compliance with a lease requirement that "The time for beginning a test well as provided in the contract hereto attached is hereby extended until July 1, 1922," as against the contention that the drilling bit should be actually piercing the earth before July 1, 1922. And, in *Stoltz, Wagner & Brown v. Duncan*,[6] it was held that the location of the well, the filing of an intent to drill with the Oklahoma Corporation Commission, the starting of location or dirt work and the moving of a bulldozer to the site constituted the "commencement" of a well.

We see no distinction in law or logic between the mining of hard minerals and the mining of an oil or gas deposit which would vary the meaning of "commencement" under the law pertaining to minerals.

█ We therefore hold that § 1 of the Strip Mining Agreement was unambiguous,

that Ferrell had "commenced" mining before September 15, 1977, as a matter of law. It necessarily follows that Russell breached and repudiated the contract by its letter notice to Ferrell of the termination of the agreement by reason of Ferrell's alleged failure to commence mining within the meaning of § 1 of that contract.

We next apply the same principles to the construction and interpretation of § 2(a) of the agreement, and particularly to the meaning and construction of the following language therein:

"Contractor shall excavate, mine and remove all merchantable, stripable coal to maximum depth from the natural surface of the ground to the bottom of the coal *that, in the opinion of Russell Creek, can be practically, economically and profitably strip mined from the Mining Area.*" (Emphasis added.)

█ We find no ambiguity extant, in the words therein used. Their clear parenthetical meaning is that Ferrell shall remove the overburden and the coal within the lease site (according to the mining plan to be furnished by Russell) until and unless Russell determines that in its opinion coal cannot be practically, economically, and profitably strip mined from the lease. It is clear to us that the language does not mean, as Russell contends, that Russell has the right to whimsically or capriciously opt termination of the contract. For Russell to exercise its right to terminate under § 2(a), it must perceive some event occuring after the signing of the contract which would be a basis for a business judgment that coal can no longer be practically, economically, and profitably strip mined from the lease. Such a determination need not, under the language used in the contract, rise to the standard of that reached by a prudent operator, but it must at least have some business judgment basis which raises it above

---

**4.** 92 A.L.R.2d 868; *United States Gypsum Company v. Schreiner*, 135 Mont. 312, 340 P.2d 548, 554 (1959).

**5.** 98 Okl. 53, 223 P. 671 (1923).

**6.** (U.S.D.C., W.D., Oklahoma) 417 F.Supp. 552 (1976).

whimsy and caprice.[7] No such determination was made by Russell. Therefore, § 2(a) of the agreement cannot rescue it from the consequences of its breach of the contract.

 We further hold that the contract is not rendered void by reason of its being terminable upon Russell's arriving at an opinion that coal can no longer be practically, economically, and profitably strip mined from the lease. Mere lack of mutuality does not in and of itself render a contract invalid unless such lack of mutuality amounts to a lack of consideration for the contract.[8]

Having determined that Russell is liable as a matter of law under the facts and circumstances of this case, there remains the question of what damages are recoverable by Ferrell from Russell by reason of loss of profits it would have made had it completed its performance under the contract.

23 O.S.1971, § 21 provides:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

Here, Ferrell made no claim for mining work performed, but instead confined its claim to loss of anticipated profits. In its efforts to establish its loss of anticipated profits, Ferrell relied solely upon one of the recitation clauses in the agreement which states: "Whereas Russell Creek estimates that there are approximately 45,000 tons of merchantable coal in and under the real estate covered by the NIKSCH Lease and approximately one million cubic yards of overburden which must be removed in order to strip mine said coal, . . ." to establish the tonnage it would have handled had it been permitted to perform the contract. There was some testimony as to what Ferrell's costs would have been if he had been permitted to perform the agreement. Section 6 of the agreement specifies that Ferrell will be paid $.50 per bank yard for material removed and $.30 per ton for every ton of coal that Ferrell has stockpiled for subsequent loading, with Ferrell to be reimbursed for his blasting costs. Thus, Ferrell contends, its loss of profits becomes a matter of simple mathematical calculation.

 Recital clauses in a contract generally do not constitute a covenant or a contractual commitment. But, as we said in *Thomas v. Dancer*,[9] quoting with approval from 17 C.J.S., Contracts § 314:

"As a general rule, recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous; but they may be looked to in determining the proper construction of the contract and the parties' intention."

The recitation clause in the agreement now before us clearly discloses the tonnage contemplated by the parties to the agreement. Moreover, since the figures were supplied by Russell which was solely responsible under the agreement for the geology and the mining plan, it may be fairly inferred that the tonnage computation was reasonably accurate.

 While the evidence as to the mining cost to Ferrell per yard was disputed by Russell's expert witnesses, the relative weight to be accorded to the testimony of experts whose testimony is not in agreement is for the jury to determine.[10]

---

7. 17 Am.Jur.2d Contracts, § 367; *Leboire v. Royce*, 53 Cal.2d 659, 2 Cal.Rptr. 745, 349 P.2d 513, 521 (1960).

8. *Adalex Laboratories v. Krawitz*, Okl., 270 P.2d 346 (1954); *Gage v. Estep*, Okl., 422 P.2d 449 (1967).

9. Okl., 264 P.2d 714 (1953).

10. See *Boxburger v. Martin*, Okl., 552 P.2d 370 (1976) and the many cases in Okla. Digest collected under Evidence, Key 570.

"As a general rule, profits which would have been realized if a contract had been performed may be recovered as damages for its breach, provided they are susceptible of being ascertained with reasonable certainty and their loss may reasonably be supposed to have been within the contemplation of the defaulting party at the time the contract was made as a probable result of its breach." [11]

In an action for lost profits resulting from the destruction of an established business resulting from a breach of contract, this court said in *Firestone Tire & Rubber Co. v. Sheets* : [12]

"It has been held that uncertainty as to the amount of damages does not prevent recovery, and where it clearly appears that loss of profits to a business had been suffered, *it is proper to let the jury determine what the loss probably was from the best evidence the nature of the case admitted.*" (Emphasis added.)

Again, in an action for damages for breach of warranty, it was held in *Boring v. Geis Irrigation Company* : [13]

"So long as the plaintiff offers a reasonable factual basis for estimating the loss of profits resulting from the defendant's breach of warranty, he may recover such damages as against the contention that the profits expected through use of the goods are too speculative."

The same rule was applied in a suit for loss of profits resulting from a breach of a contract to harvest hay in *Morgan v. Underwood.*[14]

▪ Guided by the decisions of this court as above set forth, we hold that Ferrell's evidence as to loss of anticipated profits was sufficient to submit the issue for determination by the jury.

With reference to recovery of anticipated profits, the trial court instructed the jury as follows:

No. 8. "In order to recover anticipated profits the plaintiff must have shown to your satisfaction by a preponderance of the evidence, that anticipated profits as a measure of damages was within the contemplation of the parties at the time the contract was entered into; that such anticipated profits flowed directly or proximately from the breach by the defendant; *that such anticipated profits must be from an established business* and only to the extent that the same are clearly ascertainable. (Emphasis added.)

"Each of the above conditions are required before you may award the plaintiff damages for anticipated profits. Such damages must be reasonable and in no event exceed the amount sued for, $138,850.00.

"If on the other hand you find in favor of the defendant on any of the conditions required for anticipated profits, then in that event the plaintiff is not entitled to recover, and your verdict should be for the defendant."

No. 8A. "You are instructed that an established business is one that has been in actual operation long enough to give it permanency and recognition. It should be one that has earned a profit which can reasonably be ascertained and approximated. A business in successful operation, if changed in to a different form or line of business, may become a new and unestablished business."

Assuming, without deciding, that the instructions relative to an established business were erroneous (or, at least, unnecessary), we notice that the jury nevertheless returned its verdict in favor of Ferrell. Thus, the error, if any, was harmless.

Having determined that Russell breached the Mining Lease Agreement, thereby obviating performance thereof by Ferrell, and

---

11. 22 Am.Jur.2d Damages, § 174, 23 O.S.1971, § 21.

12. 178 Okl. 191, 62 P.2d 91 (1936). The same rule was applied in a breach of bailment suit in *Groendyke Transport, Inc. v. Merchant*, Okl., 380 P.2d 682 (1963).

13. Okl.App., 547 P.2d 988 (1976).

14. Okl., 292 P.2d 1001 (1956).

that under the facts and circumstances of this case the issue of the loss of anticipated profit was one to be determined by the jury; and the jury having rendered a unanimous verdict for Ferrell, whatever errors occurred in the course of the trial have been rendered harmless, and the verdict and judgment entered in the trial court proceedings must be reinstated and affirmed.

There remains one final issue to be determined.

■ Ferrell, in its cross-appeal, complains because the court below refused to award it an attorney fee under the provisions of 12 O.S.1971, § 936 [15] as the prevailing party. This action is not one to recover for labor or services within the contemplation of 12 O.S. 1971, § 936 as interpreted by this court in the case of *Russell v. Flanagan*.[16] It is clearly an action to recover for profits which Ferrell would have realized had it been able to perform its contract with Russell. No claim is made herein for labor or service performed. It is rather a suit to recover anticipated profits which Ferrell claims it would have realized had Russell not breached the contract. Therefore, neither party will be able to recover an award for attorney fees under 12 O.S.1971, § 936, and the determination by the trial court that no attorney fees should be awarded to Ferrell should be reinstated, and sustained.

Decision of Court of Appeals reversed. Judgment of the trial court reinstated and affirmed.

All of the Justices concur.

---

**15.** 12 O.S.1971, § 936 provides: "In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to [*sic* of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

**16.** Okl., 544 P.2d 510 (1975). See also *Hamilton v. Telex Corp.*, Okl., 576 P.2d 769 (1978) reaffirming the distinction between a suit for damages for labor or services rendered on the one hand, and a suit for breach of a contract relating to labor or services, on the other hand, within the meaning of 12 O.S.1971, § 936.