2010 OK 41

Derald AHLSCHLAGER, individual; Shirley Ahlschlager, individual; Clayton Alexander, individual; Barbee Barker, individual; Bill Barker, individual; Cleo Bass, individual; Elbert Bentley, individual; Doyle Blackburn, individual; Jerry Boucher, individual; Mary Boucher, individual; Carolyn Brown, individual; Louetta Cheek, individual; Roma Chenoweth, individual; Edna Dean, individual; Karen Denison, individual; Dianne Dirickson, individual; Henry Dirickson, individual; Catherine Donahue, individual; Eunice Edison, individual; Rundell Edison, individual; Dixie Elder, individual; (Roy) Lynn Erman, individual; Sandra Ewing, individual; Jimmie Fishgrab, individual; Karen Gardner, individual; Jack Green, individual; Rhonda Hankins, individual; Bonny Hartline, individual; David Hill, individual; Ron Honeycutt, individual; Fred Michael Hooper, individual; Rheu Nell Horton, individual; Jeanne Jarvis, individual; Bill Johnson, individual; Howard Johnson, individual; Jo Jean Johnson, individual; Yvonne Johnson, individual; Sue Large, individual; David Lucas, individual; Virginia Luca, individual; Rodney Mastin, individual; Doris McNair, individual; Linda Moon, individual; Neta Morris, individual; Aves Munson, individual; Peggy Myers, individual; Carole Neptune, individual; Larry New, individual; Myrna New, individual; Cynthia Sharron Nichols, individual; Bryan Nunn, individual; Marcia Peppell, individual; Gwendolyn Phelps, individual; Patricia Pricer, individual; Louise Ratcliff, individual; Henry Ray, individual; Janet Ray, individual; Jay Roberts, individual; Loydel Robertson, individual; Kenneth Schraner, individual; Jody (Joanne) Sherry, individual; Zema (Sally) Smiddy, individual; Delton Smith, individual; Howard Smith, individual; Judith Smith, individual; Rosemary Smith, individual; Sharon Smith, individual; Russa Stout, individual; Erma (Ruth) Strickland, individual; Maxie Tenopir, individual; Melvin Tubbs, individual; Betty Tumlinson, individual; Roberta (Butch) Vowell, individual; Imogene Wilkinson, individual; Mary Wilson, individual; Carolyn Youngstredt, individual; and Kenneth Youngstredt, individual, Appellees/Counter–Appellants

v.

LAWTON SCHOOL DISTRICT, INDEPENDENT SCHOOL DISTRICT 008 OF COMANCHE COUNTY, a political subdivision of the State of Oklahoma, Appellant/Counter–Appellee.

No. 105,626.

Supreme Court of Oklahoma.

June 1, 2010.

Rehearing Denied Sept. 13, 2010.

Stanley M. Ward, Woodrow K. Glass, Scott F. Brockman, Ward & Glass, LLP, Norman, OK, for Appellees/Counter–Appellants.

Barry K. Roberts, Norman, OK, for Appellees/Counter–Appellants.

Karen L. Long, Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, OK, for Appellant/Counter–Appellee, Lawton School District.

C.E. Wade, Jr., Wade & Mackey, Lawton, OK, for Appellant/Counter–Appellee, Lawton School District.

COLBERT, J.

¶ 1 The primary issue in this matter is the effect of noncompliance with title 62, section 362 of the Oklahoma Statutes which requires proof of a municipality's or school board's current indebtedness before a judgment may be entered in a suit based on contract. This Court holds that the failure to present proof of actual indebtedness for the fiscal year in which a judgment is entered in a contract action voids such judgment. However, that failure is a jurisdictional defect in the judg-ment only. It does not void the jury's determination that a breach of contract occurred, nor does it void the jury's award of damages. Further, for the reasons stated in this opinion, this Court rejects the assertions of error concerning the trial of this matter. The trial court's judgment is vacated and the matter is remanded to the trial court for a determination of current indebtedness for the fiscal year in which judgment is to be entered on the jury's verdict and consideration of an award of attorney fees and prejudgment interest.

FACTS

¶ 2 Independent School District No. 8 of Comanche County (Lawton School District) offered an early retirement incentive plan to its employees from 1993 until 1998. The goal of the plan was to generate savings for the District by encouraging the retirement of senior level employees who could be replaced by less experienced employees who earned less money. Under the plan, eligible retirees would receive ten per cent of their annual salary and payment of the cost of the retiree's participation in the Oklahoma State and Educational Employees Health Plan until the retiree aged out of the plan, died, accepted employment which would disqualify the retiree from benefits under the Oklahoma Teachers' Retirement System, or "[b]ecause of a lack of funds, the Board of Education does not authorize the payments in any subsequent fiscal year." The contracts provided no explanation concerning the nature or extent of the "lack of funds" that would justify termination of the plan. It did provide that if the District discontinued benefits, the retiree would have the option of returning to a position with the Lawton Public Schools.

¶ 3 In April of 2002, all retirees receiving benefits under the plan were notified that the Lawton School District was faced with "a financial crisis" that would likely cause the elimination of benefits under the plan. In August of 2002, the Board of Education voted to terminate the payments to retirees under the plan but to continue to pay for the retirees' health insurance.

¶ 4 In February of 2004, seventy-nine retirees brought this action alleging that the District had breached its contracts with them by terminating payments under the plan and failing to reinstate the plan in subsequent years. The matter was tried to a jury in January of 2008.

¶ 5 The District's position at trial was that the decision to terminate the plan benefits was a proper fiscal decision in light of the "financial crisis" caused by a reduction in funding from the State of Oklahoma. It presented evidence of the cost saving measures it implemented which included the elimination of positions by attrition and the elimination of certain programs. Retirees' position was that despite the reduction in funding, the District had adequate funds available to fund the early retirement incentive plan and simply chose not to make the funding of the plan a priority. Retirees presented evidence of sufficient carry-overs of funds from prior fiscal years to fund the program. They also presented evidence to demonstrate the programs were re-instituted and the positions were re-filled.

¶ 6 The jury returned a verdict for Retirees in the amount of $1.4 million, and the trial court subsequently entered judgment on the jury's verdict. Retirees' application for prejudgment interest was denied but their request for prevailing party's attorney fees was granted.

¶ 7 The District appealed arguing that (1) the judgment was void for Retirees' failure to present evidence of the District's indebtedness for the fiscal year in which the judgment was entered pursuant to sections 362 and 363 of title 62, (2) the plan violated the debt limitation of Article 10, section 26 of the Oklahoma Constitution by purporting to bind a school district's revenues beyond the fiscal year in which the contracts were entered, (3) the plan was void for its failure to obtain the approval of the Attorney General pursuant to section 17–116.7 of title 70, (4) the trial court erred in admitting parol evidence as to the meaning of "lack of funds" in the plan, (5) the jury's finding that the District breached its contracts with Retirees was not supported by competent evidence, and (6) the trial court abused its discretion in awarding attorney fees. Retirees counter-appealed arguing that they were entitled to an award of prejudgment interest on the jury award and that the trial court erred in denying the request.

¶ 8 The Court of Civil Appeals considered the failure to present evidence of the District's indebtedness for the fiscal year in which the judgment was rendered to dispose of the matter. It declared the judgment void along with subsequent orders of the trial court which awarded attorney fees and denied prejudgment interest. It remanded the matter "to the trial court for the purpose of receiving evidence pursuant to Section 362, to include the fiscal year in which any judgment on the jury verdict is rendered and the judgments for attorney fees, if any, or prejudgment interest, if any, are entered." The Court of Civil Appeals apparently attempted to clarify its directions on remand by including the following statement in its order denying rehearing:

> Because the judgment was vacated, a new trial will be required. At that trial, the Plaintiffs/Appellees [Retirees] will or will not be able to produce the evidence required by 62 O.S.2001 § 362 discussed in the Opinion. As made clear in the Opinion, no other issue was addressed. Therefore, the Petition for Rehearing is DENIED.

Retirees petitioned for certiorari review urging that the Court of Civil Appeals erred in rejecting their argument that the requirements of section 362 had been satisfied. Today's holding, that the judgment is void but the jury verdict is not tainted by any infirmity, requires resolution of the other issues raised on appeal.

## STANDARDS OF REVIEW

¶ 9 Several legal issues are raised as to the validity and enforceability of the early retirement incentive plan contracts between the District and some of its participating Retirees. Those present questions of law which are reviewed de novo. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. The trial issue regarding the admission of parol evidence is whether the contract contained an ambiguity. That also presents an issue of law reviewed

de novo. *See Ferrell Constr. Co. v. Russell Creek Coal Co.*, 1982 OK 24, ¶ 9, 645 P.2d 1005, 1007. The jury's verdict is reviewed for any competent evidence. *Hames v. Anderson*, 1977 OK 191, ¶ 11, 571 P.2d 831, 833.

### EFFECT OF SECTIONS 362 & 363

¶ 10 Article X, section 26(a) of the Oklahoma Constitution provides:

> Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness ... in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness....

This provision requires a political subdivision, such as a school district, to carry all its corporate operations on a pay-as-you-go basis and prohibits indebtedness beyond each current year. *Herd Equip. Co. v. Township of Eagle*, 1937 OK 324, ¶ 0, 180 Okla. 172, 68 P.2d 420 (Syl. n. 2 by the Court).

¶ 11 Sections 362 and 363 of title 62 of the Oklahoma Statutes control judgments rendered against a political subdivision to insure compliance with the debt limitations set by the Oklahoma Constitution in Article X, section 26. *Okla. City v. Green Constr. Co.*, 1938 OK 510, ¶ 5, 184 Okla. 98, 84 P.2d 623, 624. Section 362 provides:

> Before final judgment in any suit based on contract, including but not limited to proceedings by the Commissioners of the Land Office to collect deficient payments plus interest and reasonable attorney fees related to bonds or other types of indebtedness guaranteed by the corpus of the permanent school fund for the support of common schools pursuant to Section 10 of this act, shall be rendered against any municipality by any court of any county in the State of Oklahoma, except in proceedings to refund any indebtedness of said municipality, proof shall be made to the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following:

> 1. An itemized statement of the bonded indebtedness of said municipality.

> 2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

> 3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor:

> > (a.) The appropriations against which each warrant was drawn or claim accrued if in judgment, and if within the limits and purposes thereof as provided by law;

> > (b.) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of "estimated income"; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year;

> > (c.) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application.

> Appeals from the judgment of the court shall be allowed as provided by law upon the giving of a bond for cost and damages in such sum as the court shall require; provided, that the county attorney of any county may, without the consent of the board of county commissioners of said county, take an appeal from said judgment

on behalf of said county and without bond for costs and damages.

Therefore, a plaintiff who has demonstrated a municipality's[1] liability in contract must "prove the municipality's ability to pay the claim at issue in order that any judgment not exceed the constitutional debt limitations." *Baylis v. City of Tulsa*, 1989 OK 90, ¶ 10, 780 P.2d 686, 688 (citations omitted). Pursuant to title 62, section 363, "[n]o judgment shall be rendered against any municipality by any court until the provisions of section [362] have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect." Okla. Stat. tit. 62, § 363 (2001).

¶ 12 Retirees argue that they substantially complied with the requirements of section 362. They note that the financial records presented to the jury for fiscal years 2002–2003, 2003–2004, and 2006–2007 demonstrated the District's income, expenses, and indebtedness and that the evidence was sufficient to demonstrate that the District had the funds to satisfy the judgment. They point to two opinions in which this Court found substantial compliance with the proof requirements set out in section 362. *See City of Enid v. Reeser*, 1958 OK 197, ¶ 17, 330 P.2d 198, 203 (holding entry of auditor's report into evidence constituted substantial compliance with statute); *City of Healdton v. Blackburn*, 1934 OK 573, ¶ 23, 169 Okla. 357, 37 P.2d 311, 313–314 (holding entry of city's financial statement was sufficient to satisfy original version of section 362). The District notes that no financial documents were presented for the 2007–2008 fiscal year, the year in which the judgment was entered. It argues that the judgment is therefore void pursuant to section 363 and that the jury's verdict is void for the same reason.

■ ¶ 13 Section 362 sets out in detail the evidence which must be presented concerning the political subdivision's legal indebtedness. It does not, however, specify any time frame for the scope or the presentation of that evidence, other than that it must be offered prior to final judgment. The issue of the temporal scope of section 362 was resolved in *Valley Vista Dev. Corp. v. City of Broken Arrow*, 1988 OK 140, 766 P.2d 344, which held that, because sections 361 through 363 "were enacted to ensure fiscal integrity of municipalities on an annual basis, it seems apparent that evidence from the same fiscal year as that in which judgment is entered is required." *Id.* at ¶ 22, 766 P.2d at 351.

■ ¶ 14 Retirees failed to meet the requirements of section 362 by presenting, prior to judgment, proof of outstanding legal indebtedness for the fiscal year in which the judgment was rendered. Contrary to Retirees' assertion, substantial compliance as to the form in which the section 362 proof is presented does not equate with substantial compliance as to its temporal scope. The judgment in this matter is void on the face of the record by operation of section 363 and must be vacated. However, the failure to present proof of indebtedness for the fiscal year in which a judgment is rendered results in a jurisdictional defect that affects only the judgment but not the jury verdict.[2]

■ ¶ 15 A judgment entered on a jury verdict is a legal concept separate and distinct from the verdict. "A judgment is a judicial act of the court in pronouncing the sentence and the law upon the facts in controversy as ascertained by the pleadings and verdict or finding." *Taliaferro v. Batis*, 1926 OK 775, ¶ 8, 123 Okla. 59, 252 P. 845, 846 (citation omitted). Section 362 recognizes the distinction between a verdict and a judgment by requiring proof of indebtedness "before final judgment." Thus, the terms of section 363 render void only the judgment. That section's impact deprived the trial court of jurisdiction to enter a judgment, but it did not remove from the court's jurisdiction the power to hear the dispute nor to submit

---

1. Section 361 of title 62 defines "municipality" to "mean any school district, independent or otherwise...."

2. Because the defect in the judgment is jurisdictional, the fact that the issue was not raised until the matter was on appeal is not fatal to the argument. *Baylis*, 1989 OK 90, ¶ 6, 780 P.2d at 687–688 (quoting *Green Constr.*, 1938 OK 510, ¶ 0, 184 Okla. 98, 84 P.2d 623 (Syl. by the Court) (holding failure to comply with section 362 may be raised for the first time on appeal)).

questions of fact to a jury. Our rejection of the legal conclusion which the Court of Civil Appeals considered as dispositive requires us to undertake an analysis of the remaining issues raised by the parties.

## DEBT LIMITATION PROVISIONS OF ARTICLE X, SECTION 26 AND JURY'S FINDING CONCERNING "LACK OF FUNDS" IN THE CONTRACTS

¶ 16 The early retirement incentive plan provided for termination of benefits if "[b]ecause of lack of funds, the Board of Education does not authorize such payments in any subsequent fiscal year." The parties agree and the record reflects that the contracting parties understood that contracts, executory or executed, which seek to bind a school district's revenues of a succeeding fiscal year are void unless authorized by a vote of the people. *Indep. School Dist. No. 1 v. Howard*, 1959 OK 17, ¶ 0, 336 P.2d 1097 (Syl. n. 2 by the Court). They disagree as to what was intended by "lack of funds" and whether it presented a question of law for the court or whether it was an issue of fact which was properly submitted to the jury.

¶ 17 The District argues that the plan it drafted may not be enforced by the jury's verdict because to do so would bind the District to pay benefits to Retirees over multiple fiscal years in violation of the debt limitation of Article X, section 26, of the Oklahoma Constitution. The District has not challenged the standard jury instruction by which the question was asked. Rather, it contends that the meaning of "lack of funds" presented an issue of law for the court rather than a jury question and that the Board of Education was not in any way bound to pay plan benefits in years ·following the fiscal year in which a contract was signed. The District considers the meaning of "lack of funds" to be a question of law for the trial judge because the term is unambiguous. It asserts error in the trial court's admission of evidence concerning the intent of the parties using the term.

¶ 18 Retirees argue that there is no debt limitation issue because they demonstrated to the satisfaction of the jury that the District had revenues on hand to meet the contractual obligations created by the plan. They urge that the District bound itself to give consideration only to authorizing funds for the plan in each successive year. That consideration would involve a good-faith [3] determination of whether "a lack of funds" justified a refusal to authorize plan benefits in that fiscal year. Retirees defend the jury's verdict asserting there was competent evidence presented from which the jury could conclude that the District breached the early retirement contracts by refusing to fund the plan while it had adequate funds to do so.

¶ 19 Whether a contract term is ambiguous so as to require extrinsic evidence to determine the intent of the parties is purely a question of law for the court. *Russell Creek Coal Co.*, 1982 OK 24, ¶ 9, 645 P.2d at 1007. "The construction of an unambiguous contract is a matter of law for the court." *Id.* On the other hand, a contract term is ambiguous if it can be interpreted as having two or more meanings. *K & K Food Servs. v. S & H, Inc.*, 2000 OK 31, ¶ 8, 3 P.3d 705, 708. "Where the meaning of an ambiguous written contract is in dispute, evidence of extrinsic facts and circumstances throwing light on the intention of the parties is admissible." *Altshuler v. Malloy*, 1963 OK 243, ¶ 0, 388 P.2d 1, 2 (Syl. n. 2 by the Court). "[T]he construction of such a contract then becomes a mixed question of law and fact and should be submitted to the jury for its determination under proper instructions by the court." *Id.*

¶ 20 The District asserts that the term "lack of funds" is clear, unambiguous, and must be given effect as a matter of law. It finds such clarity in the fact that the Oklahoma Legislature used the term in a statute which requires that the "suspension, demotion, termination or nonreemployment" of support personnel be for cause. Okla. Stat. tit. 70, § 6–101.40 (2001). The statute provides further: "This section shall not be construed to prevent layoffs for lack of funds or

**3.** "[E]very contract in Oklahoma contains an implied duty of good faith and fair dealing." *Gens v. Casady School*, 2008 OK 5, ¶ 11, 177 P.3d 565, 570 (footnote omitted).

work." *Id.* The District concludes that, as a matter of law, any loss of funding is a "lack of funds" which would justify a reduction or cancellation of benefits provided in the plan. However, the Legislature's use of the undefined and unexplained term in the context of support personnel discipline does little to advance the District's argument that the term is clear and unambiguous.

¶ 21 The trial court was correct to allow evidence of what the parties intended by "lack of funds." The term is undoubtedly ambiguous. It could mean that *any* loss or reduction in revenues would relieve the District from any duty to fund the early retirement incentive plan. It could also mean that, as Retirees assert, the District obligated itself to fund benefits in the years in which it had the funds to do so. It was therefore proper for a jury to determine what the parties actually intended by the term and whether the District met its promises to Retirees.

■■■ ¶ 22 Conflicting evidence was presented as to whether a "lack of funds" occurred at the time the District terminated the plan and in the years following its termination. The District produced evidence of a "fiscal crisis" that required cancellation of the plan benefits for lack of funds. Retirees successfully rebutted the District's position by presenting financial records and testimony that demonstrated the District had sufficient revenues to continue to pay the plan benefits. In addition, Retirees presented expert testimony concerning the amount of loss suffered by Retirees as a result of the termination of the plan. Thus, competent evidence was presented to support the jury's verdict and it will not be disturbed on appeal.

## COMPLIANCE WITH SECTION 17–116.7 OF TITLE 70

¶ 23 In 1990, the Oklahoma Legislature enacted a requirement that "any type of contract that creates an unfunded liability and is for the purpose of enhancing pension benefits" must be reviewed by the Attorney General "to ensure that the contract conforms to state law" and the failure to do so renders that contract "void." Okla Stat. tit. 70, § 17–116.7 (2001). The District notes that there is no evidence in the record that demonstrates it complied with the provision. That is not surprising as the record demonstrates the issue was not raised below. The District maintains that the retirement plan created an unfunded liability.[4] Remarkably, it further maintains that its own failure to comply with the provision inures to its benefit by making the contracts void and unenforceable. It relies on the rule that "[a] contract made in violation of a statute is void and when a plaintiff cannot establish his cause of action without relying on an illegal contract, he cannot recover." *Kincaid v. Black Angus Motel, Inc.,* 1999 OK 54, ¶ 7, 983 P.2d 1016, 1018 (citation omitted). The District reasons that because the contract is illegal, the trial court lacked jurisdiction to enforce it and absence of jurisdiction may be raised for the first time on appeal.

¶ 24 The District confuses a lack of subject matter jurisdiction, which may be raised for the first time on appeal, *See First United Bank & Trust v. Wiley,* 2008 OK CIV APP 39, ¶ 14 n. 8, 183 P.3d 1022, 1027 n. 8, with its own failure to raise illegality as an affirmative defense as required by section 2008 of title 12. That section requires the illegality to be set forth as a pleaded affirmative defense. Okla. Stat. tit. 12, § 2008(10). "[A]ffirmative defenses must be raised by the parties or are waived." *Jernigan v. Jernigan,* 2006 OK 22, ¶ 26 n. 29, 138 P.3d 539, 548 n. 29 (citing *Furr v. Thomas,* 1991 OK 93, ¶ 23, 817 P.2d 1268, 1272–73). The District's failure to raise the affirmative defense of illegality of the contract it drafted did not mean that the trial court lacked subject matter jurisdiction to determine whether the contract was breached. *See, e.g., Shaffer v. Jeffery,* 1996 OK 47, ¶ 7, 915 P.2d 910, 913 ("The affirmative defense of an agreement to arbitrate is not the same thing as lack of subject matter jurisdiction.").

## ATTORNEY FEES & PREJUDGMENT INTEREST

¶ 25 The trial court's award of attorney fees and its refusal to award prejudgment

---

4. This Court need not determine what the statute intended by "unfunded liability" or whether the contract created an unfunded liability because the statute was not raised below.

interest were founded upon its entry of judgment. Because that judgment is declared void by today's decision, those post-judgment decisions are likewise declared void and the merits of those decisions will not be addressed. A long-standing rule states: "A void judgment is, in legal effect, no judgment.... [A]ll proceedings founded upon it ... [a]ll acts performed under it, and all claims flowing out of it, are absolutely void." *Arnold v. Joines,* 1915 OK 198, ¶ 19, 50 Okla. 4, 150 P. 130, 133.

### CONCLUSION

¶ 26 This Court's review of the issues raised by the parties demonstrates no error in the trial of this cause. However, Retirees' failure to present the evidence required by section 362 renders the judgment facially void together with the trial court's post-judgment determinations concerning attorney fees and prejudgment interest. The jury's verdict, on the other hand, remains unaffected by these errors. This matter is remanded to the trial court for further proceedings that would establish proof of the District's actual indebtedness for the fiscal year in which a judgment is rendered in compliance with section 362 and for consideration of Retirees' request for attorney fees and prejudgment interest.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT JUDGMENT VACATED; CAUSE REMANDED WITH INSTRUCTIONS.

CONCUR: EDMONDSON, C.J.; OPALA, WATT, COLBERT, REIF, JJ.

DISSENT: TAYLOR, V.C.J.; HARGRAVE, KAUGER, WINCHESTER, JJ.