OSCN Found Document:TULSA AMBULATORY PROCEDURE CENTER v. OLMSTEAD

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 TULSA AMBULATORY PROCEDURE CENTER v. OLMSTEAD
2024 OK 57
Case Number: 119791
Decided: 06/25/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 57, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

TULSA AMBULATORY PROCEDURE CENTER, LLC, OKLAHOMA PAIN & WELLNESS CENTER, PLC AND PRECISION ANALYSIS LABORATORY, LLC, Plaintiffs/Appellant,
v.
TODD OLMSTEAD, Defendant/Appellee,
v.
DR. JAYEN PATEL, Third-Party Defendant.
CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION I, 
ON APPEAL OUT OF THE DISTRICT COURT OF TULSA COUNTY, 
STATE OF OKLAHOMA, HONORABLE REBECCA NIGHTINGALE
¶0 Medical providers sued a former employee for breach of an employment agreement. Employee filed counterclaims alleging he was owed unpaid wages and bonuses. Providers filed an answer to the counterclaims, raising "failure to state a claim" as the sole affirmative defense. After nearly four-years of litigation, providers attempted to raise, for the first time, that the contract was illegal and therefore void as a matter of law. The lower court issued an order finding providers had waived the affirmative defense, thus precluding its use as shield from liability. Following a trial on the merits, the trial judge determined providers had breached the employment agreement and issued a money judgment of $387,618.36 in favor of employee. Providers appealed and the Court of Civil Appeals reversed, concluding that refusal to consider providers' claim of illegality was an abuse of discretion. We granted certiorari and now hold the trial judge did not abuse her discretion in striking the Plaintiffs/Appellants' last-minute effort to raise a new affirmative defense.
COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT 
ORDER STRIKING THE ILLEGALITY AFFIRMATIVE DEFENSE 
WAS NOT AN ABUSE OF DISCRETION AND IS AFFIRMED; 
MATTER IS REMANDED TO THE COURT OF CIVIL APPEALS TO 
RESOLVE ANY REMAINING UNDECIDED ISSUES RAISED IN THE APPEAL.
 
SCOTT V. MORGAN, MOYERS, MARTIN, L.L.P., Tulsa, Oklahoma, Attorney for Plaintiffs/Appellants
DAVID R. ROSS, NORMAN, WOHLGEMUTH, L.L.P., Tulsa, Oklahoma, Attorney for Defendant/Appellee
 
GURICH, J. 
Factual & Procedural History
¶1 Dr. Jayen Patel (Dr. Patel) is one of the principal owners of Tulsa Ambulatory Procedure Center, LLC (TAP), Oklahoma Pain & Wellness (OPW), and Precision Analysis Laboratory (PAL).
[1] These entities were all housed in the same location and were interchangeably referred to by Dr. Patel and Olmstead as TAP, "the company," or "the center."[2] On January 28, 2015, Dr. Patel sent a letter to his brother-in-law, Todd Olmstead (Olmstead), extending an employment offer with his medical groups in Tulsa.[3] The job proposal guaranteed Olmstead a base salary of $85,000 along with a performance bonus paid per month "base [sic] on new referrals to the center as well as urine analysis to the partner lab."[4] Dr. Patel's proposal did not specify the amount of any bonus, only that it would be a "performance bonus paid per month."[5] Olmstead accepted the offer to serve as the Director of Business Development by signing the contract form provided by Dr. Patel.
¶2 Olmstead began his employment on behalf of all three providers on February 23, 2015. During the period between August 23, 2015, and June 14, 2016, Olmstead successfully generated new business for the various medical entities. Generally speaking, the new client referrals were to OPW and PAL, although Olmstead also marketed TAP in an effort to secure additional providers for the surgical center.
[6]
¶3 Throughout Olmstead's employment, he inquired about receiving his referral bonus, yet was never paid one. At some point, Dr. Patel increased Olmstead's salary to $100,000 annually; however, the record does not indicate precisely when this occurred. Dr. Patel testified the raise was to account for the parties' inability to come up with a suitable bonus formula. Despite a good performance record, Dr. Patel terminated Olmstead's employment with TAP on June 14, 2016.
[7]
¶4 On November 23, 2016, TAP, OPW, and PAL initiated a lawsuit against Olmstead, alleging inter alia a breach of company confidentiality and non-solicitation requirements associated with working for the medical group.
[8] Olmstead filed an answer together with several counterclaims against the Plaintiffs, including demands to recover unpaid wages and performance bonuses.[9] Plaintiffs filed a joint answer to Olmstead's counterclaims on January 10, 2017. Under a heading entitled "Affirmative Defenses," Plaintiffs' sole assertion was that "Defendant/Third Party Plaintiff has failed to state a claim upon which relief may be granted."[10]
¶5 Not only did the Plaintiffs initiate the underlying suit, they also actively participated in the litigation. Throughout the entirety of the case, Plaintiffs filed motions, conducted discovery, sought entry of scheduling orders, and attended hearings. A scheduling order was first entered on March 27, 2018, and was filed on April 20, 2018. Therein, the court set a deadline of April 27, 2018, for amendments to the pleadings. The Plaintiffs did not seek leave to amend their joint answer by the April 27th deadline. Later, the parties filed a joint motion requesting entry of a new scheduling order. On August 1, 2019, one was approved by the trial court and filed of record. In the section of the scheduling order designated for amendments or adding parties, the document reflected that no changes to the pleadings or litigants were necessary.
¶6 Approximately three weeks before the pretrial conference, Olmstead filed a motion for sanctions. Therein, Olmstead alleged that the Plaintiffs had failed to comply with a prior order compelling the companies to provide supplemental information responsive to written discovery requests.
[11] The trial judge sustained the motion, finding the Plaintiffs failed to comply with prior orders directing Plaintiffs to clarify/augment their discovery responses. The sanction order established the following designated facts for purposes of Olmstead's counterclaims: "50% of the gross income of the gross services income of Tulsa Ambulatory Procedure Center, Oklahoma Pain & Wellness Center, and Precision Analysis Laboratory during the period of Olmstead's employment were generated by Olmstead's referrals."[12]
¶7 On or about September 21, 2020, the parties' exchanged a draft pretrial conference order. Plaintiffs' new attorney submitted proposed additions to the draft order, arguing for the first time that the subject employment contract was illegal and unenforceable.
[13] Specifically, Plaintiffs suggested that the bonus structure violated federal anti-kickback laws codified in 42 U.S.C.§1320a-7b.[14]
¶8 In response to this last-minute effort to raise a new defense, Olmstead filed a motion to strike, seeking to prevent Plaintiffs from utilizing illegality as a mechanism to vitiate the contract. Olmstead argued that the Plaintiffs had waived any defense predicated on illegality because: (1) the affirmative defense had not been included in their answer to Olmstead's counterclaims; and (2) Plaintiffs did not seek amendment in a timely manner. He also claimed Plaintiffs failure to comply with discovery relating to referrals based on Medicare or Medicaid exacerbated the prejudicial effect of the late attempt to raise the defense. In a footnote, Olmstead additionally suggested that, on its merits, the claim of illegality was untenable because the anti-kickback laws exempted amounts paid by an employer to a bona fide employee. Plaintiffs filed a response and objection to the motion, and maintained that an illegal contract may never be enforced. In the alternative, the Plaintiffs argued that by raising "failure to state a claim" in their original answer, they had presented an affirmative defense broad enough to encompass illegality.
¶9 The pretrial conference was rescheduled at least twice but was last docketed for September 23, 2020. During this conference, the trial judge reserved a trial date and directed the parties to submit filings relating to unresolved motions concerning sanctions and the illegality defense. At a hearing on November 12, 2020, the trial judge sustained Olmstead's motion and issued a ruling barring Plaintiffs' use of the illegality defense during the upcoming trial. Despite this decision, Plaintiffs filed a motion for summary judgment on December 11, 2020, again challenging Olmstead's counterclaim for unpaid wages and bonuses based on federal anti-kickback laws. Plaintiffs never filed a formal motion seeking leave to amend; nevertheless, they did ask the trial judge to "constructively amend" their answer via the motion for summary adjudication. Olmstead once more asked the trial court to prohibit use of illegality as an affirmative defense, maintaining: (1) the trial court had already issued a decision finding the defense had been waived; (2) because the trial court had already stricken prohibited Plaintiffs' reliance on illegality, constructive amendment would be improper; and (3) the motion was submitted outside of the deadline for filing dispositive motions under the court's most recent scheduling order.
[15] On February 9, 2021, the trial court entered an order striking Plaintiffs' motion for summary judgment.
¶10 The lower court conducted a non-jury trial on March 2, 2021. Prior to taking testimony, Plaintiffs' counsel offered to stipulate that the bonus amount in the employment agreement was equal to "ten percent [10%] of the revenue generated by [Olmstead's] referrals."
[16] Olmstead agreed, and the stipulation was made a part of the record. Olmstead testified that new clients were cataloged with a spreadsheet which identified each patient and the provider who referred the individual. Records to support the number of referrals directly attributable to Olmstead were not submitted during trial proceedings; however, detailed documentation was unnecessary based on the trial court's sanction order. Instead, Olmstead produced profit and loss statements for TAP, OPW and PAL. After hearing all the evidence, the trial court entered judgment in favor of Olmstead, finding Plaintiffs breached the employment agreement. The lower court awarded monetary damages of $387,618.36.
¶11 Plaintiffs filed a motion for new trial on May 26, 2021, which alleged: (1) that the trial court misinterpreted the parties' stipulation and that the proper calculation of damages should have been 10% of Plaintiffs' net revenue (not gross), or $57,267.12; and (2) that the trial court should have invalidated the agreement based on their claim that the contract violated state and federal law, and was therefore illegal. The judge denied the motion for new trial and Plaintiffs timely appealed from both the underlying judgment and the order declining to grant a new trial.
¶12 The Court of Civil Appeals (COCA) reversed the order denying the motion for new trial, concluding the trial court should have considered the merits of Plaintiffs' illegality argument. COCA did not address the other issues raised by Plaintiffs on appeal. Defendant sought review in this Court, and we granted a writ of certiorari to consider whether the trial court's decision, precluding Plaintiffs' use of illegality as an affirmative defense, was supported by the record.
[17]
Standard of Review
¶
13 We examine an order denying a motion requesting a new trial under an abuse of discretion standard of review. Smith v. City of Stillwater, 2014 OK 42, ¶ 11, 328 P.3d 1192, 1197. Our prior decisions also provide that a trial judge abuses their discretion only when a decision is based on an erroneous conclusion of law or if there is no rational basis in fact for the ruling. Fox v. Mize, 2018 OK 75, ¶ 6, 428 P.3d 314, 319. Similarly, a lower court ruling which precludes a party from amending their pleadings or which prevents a party from raising an affirmative defense after filing an answer is reviewed under an abuse of discretion standard. Prough v. Edinger, Inc., 1993 OK 130, ¶ 6, 862 P.2d 71, 74.
Analysis
¶14 We are asked to decide whether the trial court erred by issuing an order striking the Plaintiffs' last minute attempt to raise illegality as an affirmative defense to Olmstead's counterclaims. Here, the Plaintiffs neither raised illegality in their answer to Olmstead's counterclaims, nor sought to amend their answer to include the defense as permitted by the trial court's scheduling order. Plaintiffs first attempted to raise their illegality argument by including the defense in a draft pretrial conference order circulated on or about September 21, 2020.
[18] Additionally, the Plaintiffs' motion for summary judgment, which attempted to raise illegality for a second time, was not filed until December 11, 2020, almost one-year after the deadline for filing dispositive motions. Thus, the Plaintiffs did not raise the illegality claim until: (a) after the trial court had already awarded summary judgment to Olmstead on the issue of breach of contract; (b) more than ten (10) months after the close of discovery; (c) more than nine (9) months after the lower court's deadline for filing dispositive motions; and (d) almost four (4) years of litigating a case originally filed by the Plaintiffs.
Affirmative defenses must generally be raised in a 
responsive pleading, motion, or by subsequent 
amendment.
¶15 Initially, we must begin with the statutory text in 12 O.S.Supp.2013, § 2008, which provides in relevant part:
* * * *
B. DEFENSES; FORM OF DENIALS. A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state, and this statement has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, he may make his denials as specific denials of designated averments or paragraphs or he may generally deny all the averments except such designated averments or paragraphs as he expressly admits; but, when he does so intend to controvert all its averments, he may do so by general denial subject to the obligations set forth in Section 2011 of this title.
C. AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively:
1. Accord and satisfaction;
2. Arbitration and award;
3. Assumption of risk;
4. Contributory negligence;
5. Discharge in bankruptcy;
6. Duress;
7. Estoppel;
8. Failure of consideration;
9. Fraud;
10. Illegality;
11. Injury by fellow servant;
12. Laches;
13. License;
14. Payment;
15. Release;
16. Res judicata;
17. Statute of frauds;
18. Statute of limitations;
19. Waiver; and
20. Any other matter constituting an avoidance or affirmative defense.
When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.
D. EFFECT OF FAILURE TO DENY. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.
E. PLEADING TO BE CONCISE AND DIRECT; CONSISTENCY.
1. Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.
2. A party may set forth, and at trial rely on, two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Section 2011 of this title.
F. CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice.
Under subsection C, a party responding to a pleading set forth in subsection A, shall raise any affirmative defenses in an original responsive pleading. 12 O.S.Supp.2013, § 2008(C); see also FED. R. CIV. P. 8(c). Failure to raise an affirmative defense in an answer may operate as a waiver of that defense. See Furr v. Thomas, 1991 OK 93, ¶ 23, 817 P.2d 1268, 1272 (holding a party waived statute of limitations defense by not raising it in their responsive pleading). However, neglecting to raise an affirmative defense in an original responsive pleading does not mean a party is forever barred from subsequently presenting the defense via amendment. See e.g., Liberty Bank and Trust Co. of Oklahoma City, N.A. v. Bachrach, 1996 OK 143, ¶ 11, 916 P.2d 1377, 1380 (finding answer should have been deemed amended to include affirmative defense when motion for summary judgment and response sufficiently raised the defense). We must bear in mind that under the Oklahoma Pleading Code (12 O.S. § 2001, et seq.), rules concerning amendments are to be applied in a liberal manner to further substantial justice. Wilson v. Webb, 2009 OK 56, ¶ 9, 221 P.3d 730, 734. Although our decisions mandate liberal application of statutes relating to the amendment of pleadings, this tenet must be balanced against notions of fundamental fairness associated with timely notice of claims/defenses and the well-ordered resolution of litigation.
¶16 A waiver generally occurs when a party fails to raise an affirmative defense in a timely manner through an original responsive pleading, amendment of an answer, filing a motion (such as a motion for summary judgment or a motion to dismiss), or by consent of the opposing party. Radio Corp. of Am. v. Radio Station KYFM, Inc., 424 F.2d 14, 17 (10th Cir. 1970). The purpose behind § 2008(C) and its federal counterpart is "to provide [parties] with adequate notice of a defendant's intention to litigate an affirmative defense, thereby affording an opportunity to develop any evidence and offer responsive arguments relating to the defense." Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003).
¶17 We have previously examined a trial court order prohibiting an amendment to assert an affirmative defense after a party failed to raise the same in a responsive pleading. In Prough v. Edinger, Inc., 1993 OK 130, ¶ 1, 862 P.2d 71, 73, we examined a trial court order prohibiting amendment to raise an affirmative defense, and found "that where the petition does not allege dates on which damage occurred, and no prejudice to the opposing party, nor undue delay is shown, a trial court abuses its discretion in refusing to allow a party to amend its answer to include the statute of limitations defense." We further recognized in Prough that while § 2008(C) generally requires affirmative defenses to be set forth specifically in a responsive pleading, the section must be viewed in harmony with the entire Oklahoma Pleading Code. Id. ¶ 4, 862 P.2d 71, 74. With the exception of the defenses outlined in 12 O.S.2011, § 2012(F),[19] nothing in the code prohibits a party from amending their responsive pleading to raise an affirmative defense omitted from the original answer.[20] Id. ¶ 5, 862 P.2d at 74. Following discovery, the trial court in Prough denied the defendant's request to amend its answer to assert the statute of limitations. Id. ¶ 2, 862 P.2d at 73. The defendant's request to amend was fifteen months after the plaintiff's complaint was originally filed; however, the plaintiff's petition did not provide specific dates on which the alleged damages occurred, and it was not until discovery had been conducted that defendant was able to ascertain the claims were time-barred. Id. ¶ 2, 862 P.2d at 73. Defendant promptly sought leave to amend. Id.
¶18 We weighed Prough lower court's decision to deny defendant's request to amend his answer under an abuse of discretion standard. Id. ¶ 6, 862 P.2d at 74. Recognizing the need to allow liberal granting of amendments under the pleading code, we explained:
Section 2008 specifically states that § 2011 applies to all forms of pleadings, including answers. Because of § 2011, an attorney will be reluctant to claim the statute of limitations defense unless it appears that sufficient facts exist to support the defense when the answer is filed. Often, the applicability of the statute of limitations is not known until discovery is conducted. If amendments were not given freely, the defendant would be faced with the choice of either pleading a defense not known to be warranted or failing to assert a defense not apparent from the outset of the claim because of the fear of incurring sanctions. A court can best reach a proper decision on the merits, while at the same time not encouraging baseless claims and defenses, by granting amendment requests at that time when the claim or defense is shown to be warranted by substantiating facts.
Id. ¶ 7, 862 P.2d at 75 (footnotes omitted). While the trial court is vested with discretion over whether to allow an amendment, the opinion further explained:
[O]utright refusal to grant leave without any justifying reason appearing for the denial is an abuse of discretion, but there is no abuse if the court relies on a reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment.
Id. ¶ 9, 862 P.2d at 75 quoting Foman v. Davis, 371 U.S. 178 (1962) (emphasis added).
[21] Applying the Foman amendment standard, this Court noted that undue delay may constitute a sufficient justification for denying a request to amend an answer; we went on to explain that certain considerations must be undertaken when evaluating the delay. Id. ¶ 10, 862 P.2d at 76. Factors to consider include: 1) the number of previous amendment requests; 2) the timing of the request (before or after discovery is closed and a trial date set); and 3) the length of time the movant was aware of the applicability of the amendment. Id.
¶19 Under the facts and circumstances presented in Prough, we found it was erroneous to deny defendant's amendment request. Id. ¶ 11, 862 P.2d at 76. (concluding that despite a fifteen month delay, "neither undue delay, prejudice, nor any other justifying reason [was] shown to warrant the trial court's denial of the defendant's motion to amend."); but see Ahlschlager v. Lawton Sch. Dist., Indep. Sch. Dist. 008 of Comanche Cty., 2010 OK 41, ¶¶ 23-24, 242 P.3d 509, 516 (recognizing that an allegedly illegal contract did not deprive trial court of jurisdiction; illegality is an affirmative defense which must be timely raised or may be considered waived).[22]
Our decision in the present case does not conflict 
with the holding in Howell's Well Service, Inc. v.
Focus Group Advisors, LLC.
¶
20 Our most recent consideration of a party's right to assert a claim or defense not originally raised in a responsive pleading was in Howell's Well Service, Inc. v. Focus Group Advisors, LLC, 2021 OK 25, 507 P.3d 623.[23] There, we reversed a trial court order finding defendants had waived their right to compel the parties' participation in arbitration. To justify the underlying order denying arbitration in Howell's Well Service, the trial judge concluded: (1) the defendants' failed to raise arbitration as a defense in their original answer; and (2) the defendants participated in the trial proceedings and failed to demand arbitration for seventeen months after service of the lawsuit. The Court of Civil Appeals affirmed the judgment, and we accepted certiorari. However, Howell's Well Service is clearly distinguishable from the present matter.
¶21 The facts in Howell's Well Service reflect that several individuals had entered into investment advisory agreements with Focus Group Advisors, LLC for purposes of managing those customers' financial portfolios. Contained within those investment advisory agreements were arbitration clauses. Plaintiffs filed suit against multiple defendants on May 2, 2013, in connection with the alleged mismanagement of client funds. Following several amendments to the petition and the passage of more than twenty months, plaintiffs finally served the defendants in January 2015. Counsel for Focus Group initially filed an appearance/reservation of time, and on February 12, 2015, filed an answer to plaintiff's third-amended petition. The answer neglected to raise the arbitration clause as a defense to litigation in state court. Roughly sixteen months later, on July 11, 2016, Focus Group filed a motion requesting the lawsuit be submitted to arbitration per the brokerage agreements. After requesting transfer of the cause to arbitration, Focus Group voluntarily attended mediation. Settlement efforts proved unsuccessful, and the case effectively sat dormant for nearly two years. A briefing schedule was set by the trial court, during which Focus Group filed a motion for summary judgment pertaining to the claims of two of the plaintiffs.
¶22 As noted, the trial court denied the motion seeking to compel arbitration. After being affirmed by COCA, we determined the ruling was erroneous and remanded the matter with directions to send the case to arbitration. This result, however, was attributable to a number of important factors which distinguish it from the present case. First, under both federal and state arbitration laws, there is a strong presumption favoring arbitration. Id. ¶ 15, 507 P.3d at 627. Second, the majority opinion in Howell's Well Service recognized that the right to invoke arbitration is not one of the enumerated affirmative defenses set forth in 12 O.S.2021, § 2008(C). Instead, adopting the rationale from federal circuit courts, we determined the phrase "[a]rbitration and award" in § 2008(C), "means an affirmative defense that a claim has already been resolved by an award in arbitration, not whether the parties claims should be adjudicated in court or through arbitration." Id. ¶ 12, 507 P.3d at 627. Accordingly, we found that the right to compel arbitration is not waived by the failure to assert it as a defense in the answer.[24] Notwithstanding, we next weighed whether the arbitration clause could nevertheless be waived through a party's litigation conduct.
¶23 Again, we examined the aforementioned question in light of the overarching policy favoring arbitration under state and federal law. Id. ¶ 14, 507 P.3d at 627. To evaluate whether a party has waived its right to arbitrate claims brought in a court proceeding, we applied a balancing test taken from federal jurisprudence:
1. Whether a party has taken actions that are inconsistent with a right to arbitrate;
2. Whether the issue of arbitration was raised only after there had been significant preparation for litigation;
3. Whether the trial date is near or there has been a long delay in raising the issue of contractual arbitration rights;
4. Whether the party invoking the arbitration right has filed pleadings in the litigation without seeking a stay of the proceedings;
5. Whether the party seeking arbitration has engaged in discovery proceedings that are not available in arbitration or participated in other important intervening steps; and
6. Whether the opposing party has been prejudiced by the delay.
Id. ¶ 15, 507 P.3d at 627-28 (quotation & footnote omitted). Applying these factors in Howell's Well Service, we noted that although there were hundreds of pages in the court file, the only pleadings filed by Focus Group were the company's answer and motion to compel arbitration.
[25] Id. ¶ 16, 507 P.3d at 628. We found that although Focus Group could have acted in a timelier manner, the company took no action inconsistent with their right to pursue arbitration:
Defendants/Appellants took no action inconsistent with their arbitration rights. There had been no discovery at all involving them and no important deadlines had yet been imposed by the trial court. Indeed, the only activity between Plaintiffs/Appellees and Defendants/Appellants was a mediation which took place after the motion to compel was filed. This out-of-court mediation for which the litigation was stayed--a fact which further exhibits Defendants/Appellants' desire to defend this case in an alternative forum--was unsuccessful.
Id. ¶19, 507 P.3d at 628. But more importantly, we found the "Plaintiffs/Appellees have failed to prove that this delay caused them any harm." Id. We went on to cite, with approval, several federal circuit cases which concluded that the mere passage of time was insufficient to overcome the strong presumption in favor of arbitration:
Prior to raising their right to arbitrate this matter, the record is devoid of any litigation activity involving Defendants/Appellants other than a responsive answer. Defendants/Appellants had not taken any meaningful steps to encourage litigation of this case in court and their only proactive pleading was their motion to compel arbitration. No discovery had been taken or exchanged, no dates for trial were in place and a scheduling order had not been entered at the time of Defendants/Appellants' motion to compel. As such, and in light of multiple lengthy delays of their own, we decline to find that Plaintiffs/Appellees were materially prejudiced by the delay in the motion to compel arbitration.
Id. ¶ 20, 507 P.3d at 629.
¶24 Under the teachings of Prough and Howell's Well Service, we must ascertain if there has been undue delay, bad faith, dilatory motive, and/or prejudice caused by the Plaintffs' failure to timely raise the illegality defense. Various federal decisions have thoroughly considered the subject.
[26] For example, the Fifth Circuit Court of Appeals, in affirming a district court decision to prohibit the late addition of an affirmative defense, explained:
Unfair surprise and prejudice are central concerns underlying the requirement that a defendant timely plead affirmative defenses. Plaintiffs must be aware of issues outside of their petitions so that they can prepare oppositions and adjust their cases in light of new facts and issues. Whether there was unfair surprise or prejudice is a fact-specific inquiry based on the circumstances of the case.
* * * *
Here, the district court found that Tauch's failure to raise First KT's alleged payments until after Baron's summary-judgment motion unquestionably prejudiced Baron in its ability to respond because the claim would require proof of additional facts beyond the face of the complaint, the general allegations in Tauch's answer failed to provide any notice that defenses might be raised as the case progressed, all of the critical pretrial deadlines had passed or were about to expire, and even at the late date that Tauch raised his payment claim he did not request leave to amend.
LSREF2 Baron, L.L.C. v. Tauch, 751 F.3d 394, 402 (5th Cir. 2014) (quotations omitted).
¶25 Likewise, in Sky Harbor Air Service, Inc. v. Reams, 491 Fed.Appx. 875, Nos. 11--8004, 11--8025, 11--8062 (10th Cir. July 20, 2012), the Tenth Circuit affirmed a lower court decision which denied a late assertion of an affirmative defense based on an allegedly illegal contract. In doing so, the appellate panel recognized those factors which must be balanced by a court when considering a delayed assertion of an affirmative defense, including "whether the opposing party will suffer prejudice." Id. at 884. The Circuit Court noted that an amendment should be denied when an untimely affirmative defense is an attempt to make a pleading a moving target or to salvage a lost case by an untimely suggestion of new legal theories. Id. Amendment is improper when a party's failure to raise an affirmative defense can be attributed to "undue delay, bad faith or dilatory motive." Id. In reaching its decision to affirm the lower court, the Tenth Circuit explained:
The district court's rejection of Sky Harbor's tardy affirmative defense was not an abuse of discretion. Sky Harbor was given the chance to litigate whether it was liable for breach of the Paint Shop lease, and it lost on that issue. In rejecting Sky Harbor's illegality defense, the district court was concerned with the principles of notice and fairness embodied in the pleading rules and with preventing the exploit[ation of] the liberal amendment policy of Rule 15(a)(2) to the detriment of final judgments and the expeditious conclusion of litigation. Its reasoning demonstrates a concern with the untimely suggestion of new theories and undue delay. Had the court allowed Sky Harbor to assert its late affirmative defense, the Defendants would have been forced to re-litigate the dispute on new bases ... and to incur new rounds of additional and costly discovery . . . depriving [them] of the meaningful value of obtaining summary judgment.
Id. (quotations omitted); see also Reed v. Columbia St. Mary's Hosp., 915 F.3d 473, 478 (7th Cir. 2019)
[27] ("A defendant should not be permitted to lie behind a log and ambush a plaintiff with an unexpected defense."); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 717-18 (8th Cir. 2008)("[defendant] waited to seek leave to plead the affirmative defense until two and a half years after the suit was filed; a month after the close of discovery; a month after it raised the defense in its summary judgment motion; almost eighteen months after the deadline for amending pleadings; and eight full months after it was actually aware of the preemption defense's applicability," thus allowing amendment was an abuse of discretion).
¶26 There can be no doubt that the record supports the trial court's determination of waiver in this case. Plaintiffs' last-minute attempt to raise the illegality defense could plainly be seen as undue delay, dilatory motive and/or bad faith. More importantly, had the trial court allowed Plaintiffs to amend their defenses on the eve of trial, it would have amounted to unfair surprise and been prejudicial to Olmstead. As noted previously, Plaintiffs did not raise the illegality claim until: (a) after the trial court had already awarded summary judgment to Olmstead on the issue of breach of contract; (b) more than ten (10) months after the close of discovery; (c) more than nine (9) months after the lower court's deadline for filing dispositive motions; (d) more than two years after the deadline to amend pleadings; and (e) almost four (4) years after the original lawsuit was filed by Plaintiffs. This new defense would obviously require Olmstead to completely re-think his litigation strategy, would have necessitated additional rounds of costly discovery, and would have further delayed a trial which had already languished for roughly four years.
¶27 But probably the most persuasive factor in supporting the trial court's finding of waiver in our view was Dr. Patel's access to all information concerning the illegality defense well before a lawsuit had even been filed. In fact, Dr. Patel's own testimony at trial indicated he had concerns prior to filing the lawsuit about potential legal ramifications associated with the structure of Olmstead's bonus. He explained, "[w]e talked often about it and every time we tried to come up with a mechanism there was some regulatory state or federal or what have you that we could not conform to."
[18] Thus, Plaintiffs' assertion of illegality did not depend on factual information gathered during the discovery process. Dr. Patel's awareness was certainly enough for the trial court to conclude that there had been undue delay, bad faith, dilatory motive, and prejudice.
Our decision in An-Cor, Inc. v. Rehrman does not 
mandate consideration of the illegality defense in 
this case.
¶28 Despite the procedural history in this case, COCA effectively decided our courts are obligated, sua sponte, to scrutinize the legality/illegality of a contract in all cases, citing to our decision in An-Cor., Inc. v. Reherman, 1992 OK 109, 835 P.2d 93. However, we believe the decision in An-Cor is distinguishable from the present case. First, the illegality defense in An-Cor arose out of a contract alleged to have been secured through the bribery of public officials. Id. ¶¶ 2-4, 835 P.2d at 94. Second, the facts pertaining to the allegedly illegal contract came directly from contentions (a) set forth in the plaintiff's own petition; and (b) which were raised in a timely manner by the defendants via motion to dismiss/summary judgment. Id. at ¶¶ 2, 6, 7, 10, 835 P.2d at 94-96. Finally, and perhaps most significantly, the case law relied upon by the Court in An-Cor pre-dates the adoption of the Oklahoma Pleading Code. Id. ¶¶ 8-9, 11-12, 835 P.2d at 95-96.
¶29 Unlike An-Cor, nothing in Olmstead's petition included allegations, which on their face, suggested the employment agreement between Olmstead and Plaintiffs was illegal. Under the facts presented, we cannot say the claims of illegality, even if proven true, are of such an egregious nature that public policy demands ignoring the mandates of the Oklahoma Pleading Code and our jurisprudence concerning waiver of affirmative defenses. See 8 Williston on Contracts § 19:12 (4th ed.) ("[T]here are cases when a court simply cannot ignore the illegality of a contract, no matter the parties' prior conduct. If the illegality is serious enough, a court may raise it sua sponte to avoid becoming an instrument of injustice.") (quoting PolyOne Corporation v. Westlake Vinyls, Inc., 937 F.3d 692, 701 (6th Cir. 2019)). In the present case, Plaintiffs drafted the subject agreement, and the contract simply provided remuneration to Olmstead in connection with his employment. Both the federal and state anti-kickback statutes provide certain exceptions, including compensation for patient referrals secured through a bona fide employment relationship.
[28] See 42 USCA § 1320a-7b(b)(3)(B)[29]; 63 O.S.2021, § 1-742(B)(2) and (3).[30]
Plaintiffs' assertion of "failure to state a claim" as an 
affirmative defense was insufficient to encompass a
claim of illegality.
¶
30 Lastly, we briefly address Plaintiffs' contention that the defense of illegality was properly preserved when they asserted Olmstead's petition failed to state a claim for which relief could be granted under 12 O.S. § 2012(B)(6). It should be noted that this matter was only raised incidentally on appeal by including the suggestion in a footnote, without any significant development of the argument. We generally do "not consider assignments of error unsupported by convincing argument or authority, unless it is apparent without further research that they are well taken." S.W. v. Duncan, 2001 OK 39, ¶ 31, 24 P.3d 846, 857. Regardless, we believe this issue has no merit. Asserting generic language intended to cover a broad range of defenses was insufficient in this case. See Collision Communications Inc. v. Nokia Solutions and Networks OY, 2024 WL 531289, at *3 (D.N.H. Feb. 9, 2024) ("A defendant who raises an affirmative defense using general language or 'in a largely uninformative way' risks waiver of the defense"); Pratcher v. Methodist Healthcare Memphis Hospitals, 407 S.W.3d 727, 736 (Tenn. 2013) ("A generic invocation of the words 'failure to state a claim' cannot be used as a vehicle to assert an affirmative defense. An affirmative defense must be specifically pleaded.") (internal quotations omitted).[31]
Conclusion
¶
31 As we have previously noted, a party is obliged to raise affirmative defenses in a responsive pleading or to promptly seek amendment of pleadings without undue delay. See e.g., Furr, 1991 OK 93, ¶¶ 23-24, 817 P.2d at 1272-73 (finding that failure to plead affirmative defense operated as a waiver). Our jurisprudence gives a trial judge discretion to find that an affirmative defense, including illegality, has been waived through the conduct of a litigant.
¶32 Under the facts and circumstances of this case, the trial judge did not abuse her discretion by prohibiting the Plaintiffs from raising illegality of contract as an affirmative defense. Plaintiffs failed to raise illegality in their initial responsive pleading, and did not timely seek to amend their answer. Further, Plaintiffs neglected to raise the illegality defense until after the trial court had already awarded summary judgment to Olmstead on the issue of breach of contract; more than ten months after the close of discovery; more than nine months after the lower court's deadline for filing dispositive motions; and almost four years after the original lawsuit was filed. Plaintiffs had sufficient information from the beginning of the case from which to raise the illegality defense, yet they withheld its assertion until just prior to the pretrial conference. The record is more than sufficient to support a finding that the Plaintiffs' delay was unjustified and prejudicial.
COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT 
ORDER STRIKING THE ILLEGALITY AFFIRMATIVE DEFENSE 
WAS NOT AN ABUSE OF DISCRETION AND IS AFFIRMED; 
MATTER IS REMANDED TO THE COURT OF CIVIL APPEALS TO 
RESOLVE ANY REMAINING UNDECIDED ISSUES RAISED IN 
THE APPEAL.
CONCUR: KANE, C.J., ROWE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH AND DARBY, JJ.
NOT PARTICIPATING: KUEHN, J.
FOOTNOTES
[1] This opinion refers to these businesses collectively as Plaintiffs.
[2] Evidence relating to who Olmstead's principal employer was, and the who were the contracting parties, was murky at best. The offer letter sent by Dr. Patel noted that the job position was with TAP, although bonuses would be based on referrals to "the center as well as urine analysis to the partner lab." Olmstead's Ex. 1. Olmstead testified that Tulsa Ambulatory Procedure Center was an outpatient surgery center, OPW was a pain management clinic, and PAL was a urine toxicology testing facility. Tr. Trans. p. 11. They were all operated at the same location, and while each was a separate operation, the record reflects they were sometimes treated as one interrelated enterprise. See Plaintiffs' Ex. 8, Employer Compliance Acknowledgement (referring to TAP, OPW and PAL as "the company"); Tr. Trans., p. 10. Even Plaintiffs filings in this case refer to all three entities as TAP. See Answer to Pet. for Writ of Certiorari. According to tax records, Olmstead was employed by and received wages from all three of the entities. Plaintiffs' Ex. 4 & 5, Olmstead tax records for 2015 and 2016.
[3] Curiously, the offer letter suggested, that if accepted by Olmstead, a subsequent employment contract would be presented for approval. The record does not reflect whether any formal employment agreement was signed by Olmstead after his work commenced.
[4] Olmstead's Ex. 1.
[5] Olmstead's Exs. 1 & 2. An electronic mail message from Dr. Patel informed Olmstead that the "bonus structure" would begin six months after his start date; however, this delay in bonus payments was not included in the actual written agreement. Plaintiffs' Ex. 2, (e-mail from Jayen Patel, M.D. to Olmstead).
[6] Tr. Trans., pp. 11, 14-15, 22.
[7] Olmstead alleged his dismissal occurred after informing Nicole Patel, M.D. (Olmstead's sister and Dr. Patel's wife/business partner) that Dr. Patel had removed marital property from the TAP clinic which was potentially subject to property division in the Patels' ongoing divorce. Olmstead's Counterclaim and Third Party Claim, O.R. at 10.
[8] Plaintiffs sued Olmstead for soliciting established patients for a competitor, allegedly in violation of a separate agreement and an employee handbook. On January 21, 2020, the trial court issued an order awarding Olmstead summary judgment on all of Plaintiffs' theories of recovery. These claims are not under consideration in this appellate proceeding.
[9] Olmstead also raised claims for infliction of emotional distress, abuse of process, and wrongful termination. These claims are not at issue in this appeal. A review of the district court docket indicates Olmstead voluntarily dismissed the abuse of process and wrongful termination claims prior to the pretrial conference. Olmstead's emotional distress claim was not included in the pretrial conference order and therefore has been abandoned. Pretrial Conference Order, O.R. at 672; 12 O.S.2021, Ch. 2, App., Dist. Ct. R 5 (I).
[10] Plaintiffs [sic] and Third Party Defendants [sic] Answer, O.R. at 19.
[11] Olmstead filed a motion to compel on June 5, 2018, alleging that during discovery Plaintiffs failed to produce a document which tracked information on Olmstead's referrals. The motion further maintained that Plaintiffs failed to respond to interrogatories relating to the same document. Olmstead's Motion to Compel, O.R. at 21-259. At a hearing on September 26, 2018, the trial court directed Plaintiffs to provide additional written answers and documents by October 12, 2018. Olmstead filed his motion seeking sanctions on September 3, 2020. Olmstead's Motion for Discovery Sanctions, O.R. at 464. A second order requiring Plaintiffs to supplement discovery responses was entered as part of an amended scheduling order. Ambiguously, this order entered on August 1, 2019 ordered Plaintiffs to supplement their discovery answers by no later than July 31, 2019. Amd. Sched. Order, O.R. at 276.
[12] Order re Motion for Discovery Sanctions, Dec. 2, 2020, O.R. at 590.
[13] Though the record does not include an order substituting counsel, we note the pleadings reflect Jayen Patel, M.D. filed a pro se response to a motion on July 27, 2020. Shortly thereafter, new counsel entered an appearance in the case. See Plaintiffs' Response to Motion for Sanctions, O.R. at 515-16 (filed on Sept. 21, 2020).
[14] See Olmstead's Motion to Strike, Ex. A, O.R. at 565 (filed on Oct. 6, 2020). The attachment is a copy of Plaintiffs' proposed defenses as set forth in the draft pretrial conference order. Plaintiffs new counsel identified 42 U.S.C. § 1320a-7b and 15 O.S.2011, §§ 104, 109 (regarding voidability of unlawful contracts and contracts with unlawful consideration) in support of his illegality affirmative defense. Plaintiffs later invoked Oklahoma's Healthcare Anti-Kickback law, 63 O.S.2011, § 1-742, in their response to Olmstead's motion to strike. Objection to Olmstead's Motion to Strike Affirmative Defense, O.R. at 574-75. It should be noted that the illegality defense was also raised in Plaintiffs' response to Olmstead's motion for discovery sanctions.
[15] The trial court's deadline for filing dispositive motions was on December 13, 2019.
[16] Tr. Trans., Mar. 2, 2021, pp. 7-8. Both attorneys neglected to mention whether the amount of revenue to be utilized in calculating the bonus was net or gross.
[17] We accepted certiorari solely to consider whether the trial court should have allowed the Plaintiffs to present their illegality defense. See Okla. Sup. Ct. R. 1.180.
[18] Notably, this occurred after Plaintiffs retained new counsel. Olmstead's Motion to Strike, Ex. A, O.R. at 557, 565.
[19] Section 2012(F) reads:
F. WAIVER OR PRESERVATION OF CERTAIN DEFENSES.
1. A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, failure to state a claim upon which relief can be granted, or lack of capacity of a party to be sued is waived:
a. if omitted from a motion that raises any of the defenses or objections which this section permits to be raised by motion, or
b. if it is not made by motion and it is not included in a responsive pleading or an amendment thereof permitted by subsection A of Section 2015 of this title to be made as a matter of course. A motion to strike an insufficient defense is waived if not raised as in subsection D of this section.
2. A defense of failure to join a party indispensable under Section 2019 of this title may be made in any pleading permitted or ordered under subsection A of Section 2007 of this title or at the trial on the merits. A defense of another action pending between the same parties for the same claim or a defense of lack of capacity of a party to sue may be made in any pleading permitted or ordered pursuant to the provisions of subsection A of Section 2007 of this title or at the pretrial conference.
3. Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

4. A waiver of the defense in paragraph 6 of subsection B of this section does not preclude a later contention that a party is not entitled to any relief as a matter of law, either by motion for summary judgment, or by demurrer or motion at or after trial.

[20] The unanimous opinion recognized the waiver directives contained in § 2012(F); however, the defense of illegality is not among the defenses set forth in that section.
[21] Foman dealt with amendments to a complaint under Rule 15 of the Federal Rules of Civil Procedure. Id. at 179, 182.
[22] In Ahlschlager, the defendant school district argued on appeal that a contract was illegal under Oklahoma law and, therefore, the trial court lacked jurisdiction to enforce it. Id. ¶¶ 23-24, 242 P.3d at 526. We rejected the argument, finding the district confused lack of subject matter jurisdiction with "its own failure to raise illegality as an affirmative defense as required by section 2008 of title 12 . . . . [A]ffirmative defenses must be raised by the parties or are waived." Id. ¶ 24, 242 P.3d at 516.
[23] Despite being published more than eight months before initial briefs were due in this proceeding, Howell's Well Service was not referenced by either party until discussed by Plaintiffs in their reply brief on appeal.
[24] We explained, "any other interpretation would contradict both the OUAA, which specifically provides for arbitration rights to be raised by motion (without mention of responsive pleadings) as well as Oklahoma's strong public policy favoring arbitration of disputes." Id. ¶ 13, 507 P.3d at 627.
[25] In Howell's Well Service, we examined the trial court docket as of the time Focus Group filed its motion to compel arbitration. Id.
[26] Because the Oklahoma Pleading Code is derived from the Federal Rules of Civil Procedure, this Court may look to federal decisions relating to parallel FRCP provisions to assist us in our interpretation of a particular rule or pleading standard. See Fanning v. Brown, 2004 OK 7, ¶ 20, n.9., 85 P.3d 841, 847; Heffron v. Dist. Ct. of Okla. Cnty., 2003 OK 75, ¶¶ 13-14, 77 P.3d 1069, 1076.
[27] In Reed, the Seventh Circuit found the district court erroneously considered an affirmative defense, pointing to several critical factors: (1) defendant offered no excuse to justify the delay in presenting the affirmative defense so late in litigation; (2) the defense did not depend on information acquired via discovery as with other defenses (statute of limitations, estoppel, waiver, etc); and (3) the affirmative defense was not raised until after discovery was completed and time/money had been expended in the litigation. Id. at 482.
[18] Tr. Trans., p. 54.
[28] In New Boston Gen. Hosp., Inc. v. Texas Comm'n, 47 S.W.3d 34, 38-39 (Tex. Ct. App. 2001), the Texas Court of Appeals held that a health care employee's compensation arrangement, which was based on solicitation of new patients, did not violate federal and state anti-kickback laws because the employee was subject to a safe harbor provision for bona fide employees. See also, United States v. Aids Healthcare Found., Inc., 262 F.Supp.3d 1353, 1361-63 (S.D. Fla. 2017) (bonuses paid by healthcare provider to bona fide employees for referrals fell within the safe harbor protection of the anti-kickback statutes).
[29] Section 1320a-7b(b)(3)(B) provides:
(3) Paragraphs (1) and (2) shall not apply to--
* * * *
(B) any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services;
[30] Section 1-742 reads in relevant part:
B. This section shall not be construed to prohibit:
* * * *
2. Remuneration for advertising, marketing or other services that are provided for the purpose of securing or soliciting patients, provided the remuneration is:
a. set in advance,
b. consistent with the fair market value of the services, and
c. not based on the volume or value of any patient referrals or business otherwise generated between the parties; and
3. Any payment, business arrangements or payments practice not prohibited by 42 U.S.C., Section 1320a-7b(b), or any regulations promulgated pursuant thereto.
[31] See also Gensler, Steven, Federal Rules of Civil Procedure, Rules and Commentary, Vol. I, Rule 8, General Rules of Pleading, pp. 223-24, wherein the author explains the differences between affirmative defenses (i.e., illegality, statute of limitation, etc.) and negative defenses (i.e., failure to state a claim):
Defendants must plead their affirmative defenses. An affirmative defense is a defense that does not seek to negate the elements of the plaintiff's claim, but instead provides a basis for avoiding liability even if the elements of the plaintiff's claim are met. A position can also be deemed an affirmative defense if it does not speak to liability, but only limits damages. But in either posture, affirmative defenses tend to have a "yes, but" logical structure: "Yes" I engaged in the alleged conduct, "but" I am nevertheless not liable. Affirmative defenses also differ from denials because the defendant bears the burden of proof as to affirmative defenses. Defendants in federal court must plead their affirmative defenses or face potential waiver. The purpose of requiring defendants to plead their affirmative defenses is to give the plaintiff notice and an opportunity to meet the defense and show, if it can, why the defense should not succeed. Defendants cannot reserve the right to assert affirmative defenses later; that would defeat the purpose of giving notice to the plaintiff. 
* * * * 
Comparison with pleading negative defenses. A negative defense is one the contests the plaintiff's ability to meet its burden to establish an element of the plaintiff's case. For example, the defense of "fails to state a claim" is a negative defense because it asserts a defect or shortcoming in the plaintiff's case. So too would be a defense that a defendant did not owe the plaintiff a duty or that a defendant did not breach a duty that was owed.
Negative (or "ordinary") defenses are governed by Rule 8(b), not Rule 8(c). As discussed earlier, negative defenses arise organically from the defendant's denials because the plaintiff has the burden of proving all aspects of its case that are not admitted. While Rule 8(b) directs defendants to "state" their defenses, the failure to do so does not trigger waiver because the plaintiff still must meet its burden of proving up its case.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1991 OK 93, 817 P.2d 1268, 62 OBJ 2873, 
Furr v. Thomas
Discussed at Length

 
1992 OK 109, 835 P.2d 93, 63 OBJ 2113, 
An-Cor, Inc. v. Reherman
Discussed

 
1993 OK 130, 862 P.2d 71, 64 OBJ 3094, 
Prough v. Edinger, Inc.
Discussed at Length

 
1996 OK 143, 916 P.2d 1377, 67 OBJ 800, 
LIBERTY BANK AND TRUST CO. v. BACHRACH
Discussed

 
2001 OK 39, 24 P.3d 846, 72 OBJ 1479, 
S. W. v. DUNCAN
Discussed

 
2003 OK 75, 77 P.3d 1069, 
HEFFRON v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed

 
2004 OK 7, 85 P.3d 841, 
FANNING v. BROWN
Discussed

 
2009 OK 56, 212 P.3d 731, 
WILSON v. WEBB
Cited

 
2010 OK 41, 242 P.3d 509, 
AHLSCHLAGER v. LAWTON SCHOOL DISTRICT
Discussed

 
2014 OK 42, 328 P.3d 1192, 
SMITH v. CITY OF STILLWATER
Discussed

 
2018 OK 75, 428 P.3d 314, 
FOX v. MIZE
Discussed

 
2021 OK 25, 507 P.3d 623, 
HOWELL'S WELL SERVICE v. FOCUS GROUP ADVISORS
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2001, 
Scope of the Oklahoma Pleading Code
Cited

 
12 O.S. 2008, 
General Rules of Pleading
Discussed at Length

 
12 O.S. 2012, 
Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 104, 
Object Unlawful, Impossible or Vague
Cited

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 1-742, 
Prohibited Acts - Penalties
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA